UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLERK
US DISTRICT & BANKRUPTCY
COURTS

2020 JUN -8 PM 2: 13

RECEIVED

| | |
|---|---|
| TESAE HARRINGTON, Pro Se ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-cv-1056 (TSC) |
| ) | |
| SECRETARY OF STATE ) | |
| MIKE POMPEO ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**PROPOSED MOTION TO ADD AN EEO CHARGE TO THIS COURT CASE**

I the Plaintiff respectfully ask this court if I can add the EEO Reprisal Charge because this court has subject matter jurisdiction and the authority to adjudicate this dispute.

The Defendant Attorney opposed this motion by email on May 26, 2014

On June 3, 2019, the Supreme Court ruled that a federal court whom has jurisdiction over a Title VII case has the authority to raise the issue on its own. Filing a charge with the Equal Employment Opportunity Commission. (EEOC). Fort Bend County, Taxes v. Davis, No. 18-525 (U.S. June 3, 2019).

I the Plaintiff described reprisal in the first page of my formal complaint's filed with the US State Department EEO Office in August 2014. The EEO Counselor refused to accept my reprisal charge to minimize the agency legal liability. The Agency also took the position to cover up discriminatory intent and animus.

I have explained below the outrageous and egregious conduct of both Defendants to cover up their retaliatory action in my termination reason and hide their discriminatory actions against I the Plaintiff and Mr. White.



This case is about 3 individuals committing awfully egregious act against title VII then terminating I the Plaintiff without any warning or notice to cover up their egregious conduct.

Defendant Cook – Became egregiously insubordinate to defendant Aguirre in May 2014 when he learned that she had reassigned I the Plaintiff to the Enforcement Division ( **Hostile Work Environment Plaintiff Affidavit A, P. 14, Q 44) See Page 1 Formal Complaint Attachment Bullet point 9)** Defendant Cook knowingly went **outside the scope of his job title** and **supervising authority** when he assigned Mr. White to the Enforcement Division **(Cook Affidavit C, P.4, Q.18 and P.3 Q.15. Aguirre Affidavit B, P.2, Q.9 Also see Plaintiff's Page 1 Formal Complaint bull point 14 and 10 and 11 Document 33-1, filed 11/27/2019 Defendants Removed this from EEO Record)** I the Plaintiff was exercising my rights under title VII when I confronted Defendant Cook. Defendant Cook stated to I the Plaintiff that I can't leave the Registration Division because I have to accommodate Mr. White. **(Page 1 attachment -Formal Compliant Bullet point 13,14,15,16,17 and 18 I had a conversation with all 3 supervisors.**

Please note: The Job block was racially motived. **(Defendant Cook did not want me in his circle as he stated in his Affidavit C, Q.19)**. Defendant Cook White circle of supervisors controlled the Compliance Department for many years they fought to keep the Jim Crow Atmosphere. That is what Defendant Cook was fighting to maintain when he became insubordinate to Defendant Aguirre to ensure that I the Plaintiff would continue to work for his division with a Registration Analyst Job title. The Enforcement Division had Compliance Job titles in which the pay rate was higher Every single White employee was given a Compliance Specialist Job title. You see it wasn't an issue with me working for the Enforcement Division for 6 years while being disenfranchised. The issues was I the plaintiff getting the Compliance Job title. That is what Mr. Cook stop in July 2013 and May 2014. **(Affidavit A, P.14, Q. 44 and See Complainants Rebuttal Statement, ROI Page 62.)**

Defendant Aguirre – I the Plaintiff reported Defendant Cook behavior to Defendant Aguirre who is the contract COR in the only government employee that can assign and reassign contract employee to work assignments and different department and divisions. **Aguirre Affidavit B P.2, Q.9, Cook Affidavit C P.4 Q 18 and Plaintiff Affidavit A, P.3, Q.7)** Defendant Aguirre refused and failed to take ANY corrective action against her White Subordinate Defendant Cook. Defendant Aguirre only response for Defendant Cook harassment towards me and insubordinate to her conduct was her conveying her sentiments of Defendant Cook and Mr. Smith actions. Defendant Aguirre stated that I report to TWO MASTERS That's it **(See Page 2 attachment of**

**Formal Complaint – Document 22-3 filed 08-16-2019 Aguirre response/racial slur towards when I reported harassment and insubordination by Cook behavior and Mr. Smith (Enforcement Division Chief) bullet point 15 and 16 bottom page. Also, Plaintiff Affidavit A, Page 14, Q.44.** Defendant Aguirre ignored her White managers behavior but took entrance in Mr. White (African American) impairment and told me to send an email to Mr. Cook Supervisor. I sent an email to Sue Gainor, Defendant Aguirre and Defendant Cook. <u>This is how Defendant Aguirre Learned of Mr. White Impairment. However, several weeks later Defendant Aguirre reassign Mr. White to the US Export Policy assignment without accommodation.</u> **See Page 1 Formal Complaint Attachment 16,17, and 18. Document 33-1 court filling and Page 1 Formal Compliant Attachment court filing 22-3 Bullet point 8-13- Also See Termination Affidavit A, Page 10, Q.38 Paragraph 2.**

I ask this court and Jury? WHY would Defendants Aguirre assign Mr. White to a work assignment (Policy Assignment) that required reading with their previous knowledge of knowing Mr. White was a <u>nonreader</u> and had learning impairments? **(Affidavit Page Q38, P12 Paragraph 7,8, and 11) Also Formal complaint – Bullet point 17 and 18 – Document 33-1- court filing and Formal Complaint Page 2- Bullet points 8-14- Document 22-3).** The fact is that is a violation of title VII.

**Mr. White bad conduct** – Mr. White refused to self Identify and request accommodation for his learning impairments. Mr. White was hired as a Mail Clerk. The previous COR Pat Slygh reassigned Mr. White to a Data Entry Position after Mr. White asked for the position which was prior to July 2013 when Aguirre took over as COR. According to Mr. White Pat Slygh (Previous COR) let him select what work he wanted to do. Now in around February of 2014. The Data Entry work went obsolete **(Formal Complaint Page 1 – Bullet point 4-Document 33-1)** Mr. White was reassigned to an assignment that required reviewing, analyzing various documents in the Registration Database **(Affidavit A, ROI Page 84 Document Management Analyst Job description).** I the Plaintiff learned Mr. White was not qualified for the new assignment because he wouldn't read the documents or write even when I asked him to. Mr. White wasn't retaining the training information. The assignment required reading on a daily basis. Mr. White should have self-identified himself as a person with a disability and asked management for accommodations in February 2014. In February 2014 Defendant Cook directed I the Plaintiff to train the previous data entry team - Mr. White, Sheron Devonish and Paula Ross **(Formal Complaint Page 1 – Bullet point 6- Document 33-1).** Mrs. Ross and Devonish received my training and started working independently. However, Mr. White never started working independently. Mr. White used I the Plaintiff to hide his reading impairment from February 2014 – June 26, 2014 date of termination . Now on June 25, 2014 Mr.

White was forced to start the US Export Policy assignment by Defendant Aguirre without accommodation **(Affidavit A, Q38, Page 12, Paragraph 7,8, and 11).** Again Mr. White refused to self I identify. I the Plaintiff reach out to help Mr. White on June 25, 2014. Once I answered a few questions for Mr. White he still had a had many more questions. I could not concentrate on my work with Mr. White constant need of assistant. Mr. White continued to pull I the Plaintiff from my work obligations. I finally told Mr. White I can't help you any. I am not getting back up **(Affidavit A, P.13, Q.41)** This is the egregious conduct by Mr. White. Mr. White knowing and intentionally typed extremely fast incorrect information into the US Export System on June 25, 2014 and then he took an extended lunch break. Mr. White went to his desk and called his company after returned to the office from his lunch break **(Affidavit A, Q. 38 P. 25, Paragraph 14.).** Mr. White turned away from his desk to face my desk so I can hear his phone conversation with his supervisor Akinola. Mr. White stated to Akinola that he was going to get a call from Defendant Aguirre. Mr. White Stated that he use to finish the previous work assignment before most of the young ladies in here. Mr. White was referring to the Data Entry work assigned to prior to February 2014. Mr. White statement to his supervisor was greatly ingenuous and intentionally manipulative when he compared his work performance between the Data Entry Assignment and the Policy Assignment. The Data Entry Assignment required us to type information from a paper file **(Affidavit A, ROI Page 107 Data Entry Assignment Description).** We were simply retyping renewal Applications on a blank application and then saving it and sending it off for further processing that is it. It didn't require any reading, writing or comprehension. We simply typed what we saw. The US Policy work required us to put specific information into specific fields in the US Export live database **(Affidavit A, ROI Page 110, Policy Assignment Description ).** The US Policy work required reading comprehension. We had to type specific information from the company electronic file folder into the appropriate field in the US Export system. Last, at one point I the Plaintiff was completing the US Export System Assign simultaneously with Mr. White. So, before I started, I told Mr. White that we have to let each other know the number of the case that we are working on so we won't type a company case information twice. So, I notice Mr. White was typing/creating cases awfully fast. I became alarmed. I told Mr. White do not put wrong information into the database because we don't have any permission to correct of our mistakes. I even told Mr. White that I made mistakes and Kathy Fox fixed them. It manifested itself when I heard Tonya Philips tell Mr. White to send her an email on the information that he made mistakes on **(Affidavit A, P25, Q14 ).**

I had a conversation with Mr. White a couple of hours later. I asked Mr. White was he offended by anything I said. Mr. White said yes, you better not talk to me like that again. I said like what? When I told you, I wasn't going to get back up to help you.

<u>He said yes. I was shocked Mr. White was depending my accommodation to hide his inability to complete reading assignment independent. I told Mr. White that I have a disability myself and I am dyslexic. I told Mr. White I know that he have a disability. Mr. White said know I don't that is what you have. He said what are you a psychiatrist now?(</u> **Affidavit A Q.38, P25, Paragraph 15)**

### Reprisal

The next day on June 26, 2014, Defendant Aguirre terminated I the Plaintiff immediately without any due process. Defendant Aguirre never conduct an investigation or called me to her office to discuss the matter. I the Plaintiff was terminated by Defendant Aguirre for insubordination because Defendant Aguirre claimed that she told me not to train Mr. White and that she had training accommodations set up for Mr. White and myself. **Defendant Aguirre insubordination proved to be a lie. There wasn't any training set up for myself or Mr. White.** Defendant Aguirre also stated that I mention to Mr. White that he was mentally challenged. I the Plaintiff was shocked when Defendant Aguirre put that in my termination explanation because I reported that I have a disability in May 2014 and Mr. White was harassing me when he would continuously pull me away from my work obligation. At times I would become impaired and lose my concentration and through pattern with me constantly accommodating Mr. White (**Affidavit A, P13. Q41).** I explained to Mr. White that I am a person with a disability as well (**Affidavit A Q38, P.25 Paragraph 15)** I was simply trying to convey that we both have learning impairments. As I did in the email to managers in May of 2014.

So that is very manipulatively conniving for Mr. White to finally be honest and self identify as a person with a disability 5 months later through his company on June 26, 2014 after he carelessly ruined a multi-agency work assignment by intentionally typing knowingly incorrect information into the US Export database on June 25, 2014.

Defendant Aguirre indeed violated title VII against Mr. White and terminated I the plaintiff to cover it up. However, Mr. White hands are not clean in this situation either because he refused to ask for accommodation and or Self Identify as a person with a disability From February 2014 – June 25 2014. Mr. White used I the Plaintiff to hide his disability then treacherously used his company to convey his anger towards I the plaintiff because he selfishly believed that my time or work obligation wasn't as important as his need for accommodations. Mr. White believed that I was responsible for exposing his disability because I stopped helping him with the Policy Assignment.

I ask this court Why would Defendant Aguirre implement Defendant Cook in her termination explanation if the entire termination had nothing to with Cook Division?

Defendant Aguirre implemented Defendant Cook in my termination because she knew that my May 2014 email implemented her previous knowledge of Mr. White learning Impairment. **(Affidavit A Page P. 12, Paragraph 7,8 and 11. Formal Complaint-Bullet point 16-18 Document 33-1-1 and Formal Compliant Page 2 –Bullet point 8-14- Document 22-3-** So Defendant Aguirre used Defendant Cook to cover up her violating title VII against Mr. White and Defendant Cook got the opportunity to cover up his behavior in my blocked promotion (**Affidavit A, P14, Q 44 and P17, Q46**). Both White managers helped each other against I the Plaintiff. Mr. White nor his company had no clue that Defendant Aguirre previously had knowledge that Mr. White had reading and learning impairments that is why I was terminated without notice at home after working hours.

## Plaintiff Disability Discrimination Affidavit A, P13.Q 41

Unlike Mr. White I did self-Identify in May of 2014 to Defendant Aguirre and Defendant Cook. Therefor, the Defendants knew that I had a disability. I informed Management that Mr. White was constantly pulling me away from my work obligation to accommodate him. I said Mr. White makes it difficult for me to concentrate on my work obligation. Mr. White constant need of assistance stressed me out at times and effects my major life activities such concentrating, thinking, reading, disrupting my thought pattern etc. (**Affidavit A, P.4,5 ,6 Q 16, 21 and 25).**

On June 25, 2014, Mr. White continued to do what I stated in May 2014. He constantly requested my assistances. I finally told him I wasn't going to help him anymore. At that time, I felt like I was in a hostile environment and Mr. White was harassing me. I had a heavy workload. Termination (**Affidavit A, Q.38 P.12, Paragraph 9)**

Management failed to confront Mr. White about him continuously asking me for assistance in May 2014. Instead Defendant Aguirre used Mr. White disability to harass him in June 2014 and when she was confronted by Mr. White Company, she terminated I the Plaintiff immediately with no questions asked.

Further, Defendant Cook did not like me. He couldn't stand me because he knew that I was different from my peers. So he would tell me to my face "The only job for you is a File Clerk position" (**Affidavit A, P.8, Q33**) and you will never get any advancement opportunities from me or my circle (**Cook Affidavit C, P4. Q19. Egregious race discrimination comment about his Circle of White supervisors in the Compliance department where he block my job promotion twice Affidavit A, P. 14,Q 44 and P.17, Question 46)** The problem with Defendant demeaning racially motivated comment is that I was never in a File Clerk position. I was hired for a Document

management Analyst position. So Defendant Cook felt that I should be demote down to the lowest position in his division. So his request for I the plaintiff to complete an SOP which was a skill set outside of my job title and above a File Clerk position was blatant harassment. Tanya Philips and Denise Lee showed all of us the new registration process. So it was their job to make the training manual. Defendant Cook pulling me away from my US Export assignment and Enforcement work was harassment and foolishness. Defendant Cook caused problematic employee Paula Ross to make a derogatory comment again. I believed it to be related to my impairment. I watched Defendant Cook laugh at the first derogatory comment that Paula made. Defendant Cook enjoyer **(Affidavit A, P.15 and 16 Q 45 Public Humiliation/Hostile Work Environment)**

## Conclusion

Due to the Reason above, I ask this court to please allow I the plaintiff to add the **Retaliation Charge.**

Respectfully Submitted,    6/7/2020
Tesae Harrington Pro Se Plaintiff
703 Dahlia Street NW
Washington, DC 20012

Certificate of Service

I certify that on 6/7/ 2020, I the Plaintiff, Pro se mailed a copy of the Motion to Add EEO Charges to this Court Case

To:

Alan Burch
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 Fourth St., NW
Washington, DC 20530