**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **TESAE HARRINGTON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-cv-1056 (TSC) |
| | ) | |
| **MICHAEL R. POMPEO**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Tesae Harrington, proceeding *pro se*, is a former contractor with the Department of State's Division of Defense Trade Controls (DDTC).  Harrington brings disparate treatment and retaliation claims against Secretary of State Michael Pompeo based on her race, sex, and disability, as well as a hostile work environment claim, under Title VII and the Rehabilitation Act.  Defendant moves to dismiss her Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 22.)[1]

Having reviewed the parties' submissions, the court will GRANT in part and DENY in part Defendant's Motion to Dismiss.

---

[1] After Defendant filed its reply, Harrington moved for leave to file a supplemental memorandum.  (ECF No. 38.)  The court will deny the motion.  Defendant did not raise any new arguments in reply that require a response from Harrington in order to avoid prejudice. Moreover, the additional argument and factual allegations in the proffered supplemental memorandum do not change the ruling on the motion to dismiss.

## I.    BACKGROUND

Harrington, a Black woman, worked as a contractor[2] for DDTC from 2007 until her termination in June 2014.  (ECF No. 1-1 at 31.)[3]  Harrington has dyslexia, an observable speech delay, and developmental and intake delays.  (ECF No. 1 at 3, 62–63.)  While at DDTC, she worked in a support role in several divisions, including Enforcement, Registration, and Policy, and was working as a registration analyst when she was terminated.  (*See* ECF No. 1-1 at 3–14, 31, Aguirre Aff., ¶ 6.)  Harrington's filings detail problems with co-workers, as well as several supervisors, who she alleges denied her promotions at least twice.  (ECF No. 1 at 5.)  In addition, one of her supervisors, Lisa Aguirre, a White woman, purportedly told Harrington she had "two masters," which Harrington considered a racial slur.  (ECF No. 1-1 at 38.)

Harrington alleges that supervisor Daniel Cook, a White man, gave her assignments, such as training other employees, that were outside her qualifications.  (ECF No. 1-1 at 37–38.)  She also appears to allege that Cook went beyond the scope of his supervisory authority several times, by keeping her in his division, blocking her promotion to the Enforcement Division, and assigning her work when he should not have.  (ECF No. 1-1 at 35; ECF No. 33-1 at 4.)  Harrington alleges that her "known disability made it difficult at times to complete task[s] when [she] felt pressured."  (ECF No. 33-1 at 4.)  She further claims that Cook criticized her in front of her peers when she could not respond to a question.  (ECF No. 33-1 at 5.)  He also allegedly laughed at her when another coworker, Paula Ross, made an undisclosed comment regarding Harrington's disability. (ECF No. 1-1 at 38.)

---

[2] DDTC contracts with Harrington's employer, Kelly Government Solutions, for certain personnel staffing.  (ECF No. 22-5 at 5.)

[3] All cites are to ECF page numbers.

Harrington claims she had a disagreement with her co-worker Stacy Gladney about whether Gladney was fulfilling certain job duties.  (ECF No. 1-1 at 32–33, 55–56.)  Gladney reported to a supervisor that Harrington was "threatening" her; Harrington reported Gladney for "harassing" her.  (*Id.* at 32–33.)  Aguirre spoke to both employees about the issue, but it does not appear that any disciplinary action was taken.  (ECF No. 1-1 at 32–33, 55–56.)

Harrington also alleges two major incidents with another contract employee, Robert White.  In September 2013, Harrington objected to White's turning off a heater on her desk.  (ECF No. 1-1 at 33.)  The dispute escalated, with White yelling at Harrington, and she claims she thought he might hit her.  (*Id.*)  The next day, while apologizing, White hugged Harrington without her consent.  (*Id.* at 34.)  Harrington reported the altercation and the hug to Aguirre.  (ECF No. 33-1 at 4.)  Aguirre held separate meetings with White and Harrington and contacted their contracting companies.  (ECF No. 1-1 at 33, 38; ECF No. 33-1 at 4.)  Aguirre allegedly told Harrington that White "apologized and seemed sincere," and a supervisor at Harrington's contracting company instructed her to go to the restroom and call him if she felt threatened by White.  (ECF No. 1-1 at 34.)

Sometime in May or June 2014, Harrington and White were both working for Cook, who directed Harrington to assist White on a project.  (ECF No. 33-1 at 4.)  Harrington e-mailed Aguirre, Cook, and Cook's supervisor to explain that she was "overwhelmed," and that she had been accommodating White throughout the year on work he could not complete.  (*Id.*)  Cook later told Harrington that she needed to train White.  (*Id.*)  Harrington then complained to Aguirre about White, and Aguirre told her she no longer needed to train White.  (ECF No. 1-1 at 35.)  Harrington also alleges that White has a learning disability about which his supervisors were aware, but they still assigned him difficult work that required Harrington's assistance.

3

(ECF No. 33 at 12–13.)  White later complained to Aguirre about Harrington's treatment of him, and shortly afterward, on June 26, 2014, DDTC terminated Harrington for instigating issues with co-workers.  (ECF No. 1-1 at 39.)

Harrington promptly contacted an Equal Employment Opportunity counselor and, after receiving a right to sue letter, sued in this court, asserting race, sex, and disability disparate treatment and retaliation claims, as well as a hostile work environment claim.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The court does not assess the truth of what is asserted nor "whether a plaintiff has any evidence to back up what is in the complaint."  *Id.* (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and move plaintiff's claims "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007).  Facts that are "merely consistent" with a defendant's liability do not meet the plausibility standard.  *Iqbal*, 556 U.S. at 678 (citation omitted).

"Courts in this Circuit 'have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive . . . a motion to dismiss[.]'"  *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (quoting *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011)).  A plaintiff need not "plead every fact necessary to establish a prima

facie case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citation omitted); *see Farrar v. Wilkie*, No. 18-cv-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161–62 (D.C. Cir. 2015)).  Nonetheless, a plaintiff must allege sufficient facts "about 'what . . . [,] who . . . [,] and how' that make such a claim plausible." *Id.* (quoting *Arnold v. Speer*, 251 F. Supp. 3d 269, 273 (D.D.C. 2017) (brackets and ellipses in original); *see Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015) (explaining that while a plaintiff need not plead a prima facie case on a motion to dismiss, the plaintiff must nonetheless allege facts that if accepted as true would make the discrimination claims plausible).

The court presumes the truth of a plaintiff's factual allegations, *see Iqbal*, 556 U.S. at 679, and construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  This presumption does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (the court "do[es] not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged.").

*Pro se* complaints, "however unartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nonetheless, a *pro se* plaintiff must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.    ANALYSIS

#### A. **Disparate Treatment Claims**

1. Exhaustion

The EEOC has promulgated detailed regulations establishing administrative procedures for resolving employment discrimination claims against federal agencies.  A Title VII plaintiff must timely exhaust these administrative procedures before filing suit in federal court, although the limits are not jurisdictional.  *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). First, an employee must consult an Equal Employment Opportunity (EEO) counselor within 45 days of the alleged discriminatory acts.  *In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006) (citations omitted).

Harrington claims she was not promoted in June 2013 and May 2014 because of her race. (ECF No. 1 at 4.)  Defendant argues that because Harrington first contacted an EEO counselor on July 28, 2014, more than 45 days after her second failed promotion, her failure to promote claims are time-barred.  (ECF No. 22-1, Def. Br. at 9.)  Harrington responds that these non-promotions are connected to ongoing discrimination that she reported on July 28, and therefore she has raised a continuing violation claim.  (ECF No. 33-1 at 4.)  However, each "discrete act" of discrimination or retaliation must be exhausted "regardless of any relationship that may exist between those discrete claims and any others."  *Coleman–Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time." (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002))); *see also Adesalu v. Copps*, 606 F.

Supp. 2d 97, 101 (D.D.C. 2009) (holding a plaintiff must exhaust the administrative process for each failure to promote claim).[4]

Because her failure to promote allegations each involve a discrete act that occurred outside the 45-day window (at best she needed to report by August 14, 2013, and July 15, 2014), Harrington's continuing violation theory does not rescue her claim; and the court will grant Defendant's motion to dismiss her disparate treatment claims based on non-promotion. [5]

2.   Sex and Race Disparate Treatment Claims

To state a Title VII disparate treatment claim, a plaintiff must plead that she "suffered an adverse employment action" because of her "race, color, religion, sex [or] national origin." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Harrington alleges that when she reported the incident in which White yelled at her and later hugged her without consent, her supervisors neither disciplined nor terminated him. (ECF No. 1-1 at 39.) But when White later reported an argument with her, she was terminated. (*Id.*) Read in the best light for Harrington, these allegations are enough to state a sex discrimination claim because she claims she was treated less favorably than a male who engaged in similar conduct.

Defendant's only argument for dismissing Harrington's sex-based termination claim is that she did not plead she was similarly situated to White. (Def. Br. at 7.) But on a motion to dismiss, a plaintiff need not plead every element of a prima facie case and need not plead

---

[4] Harrington cites *Anisman v. Department of Treasury*, EEOC No. 05A00283 (2001), in support of her continuing violation doctrine argument. However, an EEOC decision is not controlling and, moreover, the decision was issued a year before *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), which controls here.

[5] In her latest filing, Harrington also appears to allege that Cook improperly demoted her in July 2013. (ECF No. 38 at 5.) To the extent Harrington intended to base a claim of discrimination on her demotion (which does not appear in the Complaint), there is no indication she exhausted her administrative remedies for this demotion.

specifics about comparators.  *See Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d

178, 183–84 (D.D.C. 2013) (finding plaintiff adequately pleaded a discrimination claim without

identifying a comparator who received more favorable treatment); *see also Sparrow v. United*

*Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation omitted) (explaining a

plaintiff need not plead every element of a prima facie case of discrimination to survive a motion

to dismiss).  Moreover, both cases that Defendant cites in support were decided after trial, not on

a motion to dismiss.  (Def. Br. at 7 (citing *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999);

*Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).)

  As to Harrington's raced-based termination claim, Defendant argues dismissal is

appropriate because Harrington has not pleaded sufficient facts to support her discrimination

allegation.  (Def. Br. at 10.)  At this stage, a plaintiff need only plead facts that are sufficient to

create an inference of racial discrimination.  *See, e.g.*, *Fennell*, 770 F. Supp. 2d at 127; *see also*

*Sparrow*, 216 F.3d 1115.  Harrington alleges that her supervisors, who are White, grouped all

Black employees into one department, resulting in lower pay for the Black employees.  (ECF No.

33 at 2–3.)  She also claims that her White supervisor told her she worked for "two masters."

(ECF No. 33-1 at 4–5.)  At this stage, these allegations are sufficient to survive a motion to

dismiss because Harrington alleges facts suggesting that her supervisors' decisions were

motivated by discrimination.  *See, e.g.*, *McNair*, 213 F. Supp. 3d at 86–87 (allowing Title VII

complaint to go forward, even though it lacked "specifics").

  The court will therefore deny Defendant's motion to dismiss Harrington's sex and race

disparate treatment claims based on her termination.

3.  Disability Disparate Treatment Claims

To state a Rehabilitation Act discrimination claim, a plaintiff must plead that she "suffered an adverse employment action . . . because of [her] . . . disability." *Baloch*, 550 F.3d at 1196.  Under the Rehabilitation Act, a plaintiff ultimately "must prove that [her] disability was the 'sole' or 'but-for' reason" for the adverse employment action. *Gard v. U.S. Dep't of Educ.*, 752 F. Supp. 2d 30, 36 (D.D.C. 2010) (citing 29 U.S.C.A. § 794(a)).  At the motion to dismiss stage, the court does not "undertake a 'full causation analysis' in determining whether plaintiff has stated a claim." *Badwal v. Bd. of Trustees of the Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015) (citing *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90 (D.D.C. 2009)).  Instead, a complaint must contain "sufficient factual matter" from which a court can "draw the reasonable inference," *see Iqbal*, 556 U.S. at 678, that the plaintiff's employer discriminated against her because of her disabilities.  A plaintiff's allegation that "the employer's proffered reasons for the adverse employment actions [are] false may support an inference of discrimination sufficient to survive a motion to dismiss." *Nurriddin*, 674 F. Supp. 2d at 90 (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)).

Defendant contends that Harrington did not plead that DDTC terminated her solely because of her disability, in part because she stated in her opposition that she "may not have been terminated based off of my disability.  However, I adamantly believe that I was harassed by Mr. Cook because of my race."  (ECF No. 33 at 9.)  While this statement appears inconsistent with Harrington's disability claim, the court does not construe it as conceding the claim, because she can plead alternative theories of relief.  *See* Fed. R. Civ. P 8(d)(3) ( "a party to state as many claims or defenses as it has, regardless of consistency."); *Brooks v. Grundmann*, 748 F.3d 1273, 1279 (D.C. Cir. 2014) ("Title VII cases often involve multiple, sometimes mutually exclusive,

theories of relief, and nothing prevents a plaintiff from pleading in the alternative, if only for the sake of preservation.").  Consequently, the court will deny Defendant's motion to dismiss the disability discrimination claim.

## B.  Retaliation Claims[6]

Defendant seeks dismissal of Harrington's retaliation claims, arguing that she did not exhaust those claims, and even if she did, she did not engage in protected activity.

### i.  Exhaustion

A plaintiff filing an employment discrimination suit must first exhaust their administrative remedies by filing an administrative charge with the EEOC.  29 U.S.C. § 626(d)(1)(A)–(B); *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019).  Exhaustion serves the dual purpose of "'protect[ing] administrative agency authority' by allowing the agency to correct its own mistakes and by discouraging disregard of its procedures, and 'promot[ing] efficiency' by building a useful record for judicial review and, in some cases, eliminating the need for judicial review altogether."  *Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

Harrington submitted two EEOC charges, each with a two-page narrative attached.  (ECF No. 33-1 at 3–5, 8–10.)  In what appears to be the first she submitted, dated August 26, 2014, Harrington checked the boxes for discrimination on account of race, sex, and physical disability, adding that she has dyslexia.  (ECF No. 33-1 at 8.)  She also checked the box for "reprisal" based

---

[6] Harrington moved for leave to "add an EEO charge" to her Complaint. (ECF Nos. 37 & 39.) This appears to be a request to amend her Complaint to include retaliation claims.  The nature of the "new EEO charge" is unclear and, more importantly, Harrington already successfully pleaded a retaliation claim.  Accordingly, the court will deny the motion.

on "opposing discriminatory policies or practices." (*Id.*)  The two-page narrative contained a section on "Sex and Race Discrimination/Reprisal." (*Id.* at 10.)

In a second charge, dated August 27, 2014, she again checked the boxes for discrimination based upon race and sex, mentioned she has dyslexia, and attached a two-page narrative. (*Id.* at 3–5.)  But she did not check the box for reprisal, and her narrative no longer contained a heading including the word "reprisal."  Otherwise, the two narratives are almost identical.

There is some confusion, however, about which charge was the "later-filed" operative charge.  Defendant asserts that the August 26 charge (which has "reprisal" in the heading) constitutes the "later-filed" operative charge.  (*See* ECF No. 36, Def. Reply, at 4 (citing ECF No. 33-1 at 8).)  Harrington appears to agree, (ECF No. 33-1 at 1), but the August 27 charge contains no references to "reprisal."  Thus, it is not clear which charge the EEOC used in determining which claims to investigate; it accepted only her termination disparate treatment claim and hostile work environment claim for investigation.  (ECF No. 22-4, Ex. 3, Accepted Claims at 1.)  But, because the parties appear to agree that the August 26 charge mentioning reprisal is the operative charge, the court will treat it as such for purposes of the motion to dismiss.[7]

Defendant argues that, despite mentioning reprisal, Harrington did not exhaust her retaliation claim because she did not ask the EEO to modify the claims accepted for investigation to include retaliation.  (Def. Br. at 4–5.)  It points the court to caselaw from this district holding

---

[7] Even if Harrington did not "check the box," that fact is not necessarily fatal to her claim.  A plaintiff need not use particular talismanic language in an EEO complaint, nor must she use the specific term "retaliation" in order to properly exhaust such a claim.  *See Johnson-Parks v. D.C. Chartered Health Plan*, 806 F. Supp. 2d 267, 270 (D.D.C. 2011) (quoting *Maryland v. Sodexho, Inc.*, 474 F. Supp. 2d 160, 162 (D.D.C. 2007)) ("[T]he law does not hold an employee to the use of magic words to make out a proper discrimination charge.").

that a plaintiff's "failure to respond to the [agency's] framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO." *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 67 (D.D.C. 2011).  But other courts in this district have disagreed with that conclusion.  For example, in *Mokhtar v. Kerry*, 83 F. Supp. 3d 49 (D.D.C. 2015), *aff'd,* No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015), the district court held that the EEO's framing of the complaint was not determinative in whether a plaintiff had exhausted their claims.  *Id.* at 66.  The court explained that "failure to respond to the acceptance-of-claims letter" is distinct from other exhaustion issues, like "failure to cooperate during the administrative investigation."  *Id.*; *see also Sellers v. Nielsen*, 376 F. Supp. 3d 84, 95 (D.D.C. 2019) (recognizing split in this district and rejecting the "hardline approach" of *McKeithan*).  This court agrees with the reasoning in *Mokhtar*, and will not dismiss this *pro se* litigant's claims for failure to respond to the EEO's framing of her claims.  *Cf. Loe v. Heckler*, 768 F.2d 409, 417 (D.C. Cir. 1985) (noting that "judges slight the legislature's central command if they fail to recall that Title VII was devised as a measure that would be kept accessible to individuals untrained in negotiating procedural labyrinths").

### ii.   *Protected Activity*

Defendant further contends that Harrington failed to plead that she engaged in a statutorily protected activity.  To state a claim for retaliation, Harrington must allege that she "engaged in a statutorily protected activity, that [her] employer took an adverse personnel action against [her], and that a causal connection exists between the two."  *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 41 (D.D.C. 2013) (citing *Carney v. Am. Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998).  Statutorily protected activities include "opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment."

*Coleman v. Potomac Elec. Power Co.*, 422 F. Supp. 2d 209, 212 (D.D.C. 2006) (citation

omitted).  A plaintiff "must be opposing an employment practice made unlawful by the statute

under which she has filed her claim of retaliation."  *Lemmons v. Georgetown Univ. Hosp.*, 431 F.

Supp. 2d 76, 91–92 (D.D.C. 2006).  Defendant argues that Harrington does not allege that she

engaged in statutorily protected activity, as she merely reported "discomfort with assigned

tasks," not that anyone was engaged in discrimination.  (Def. Br. at 6.)

The court disagrees.  Harrington describes reporting to Cook in March 2014 that a co-

worker made fun of her disability.  (ECF No. 1-1 at 38.)  She also describes reporting to Aguirre

in May 2014 about Cook's "offensive" and "intimidating" conduct, including allegedly laughing

at her disability.  (ECF No. 1-1 at 38.)  She further reported to both Aguirre and Cook problems

with a male co-worker, who gave her a non-consensual hug.  (ECF No. 1-1 at 34.)  Viewing

these allegations in the light most favorable to Harrington, the court finds that she alleges that

she engaged in protected activity by informing her supervisors of inappropriate conduct relating

to her sex and disability.  A few months later, DDTC terminated her.  At the motion to dismiss

stage, these allegations are enough to state a retaliation claim on the basis of disability and sex.

Conversely, the Complaint contains no allegations that Harrington engaged in protective

activity with respect to any race-based discrimination.  Although Harrington claims that Black

employees were relegated to one department, she does not claim that she reported this racial

discrimination to management.  (*See* ECF No. 33-1 at 5.)  Therefore, she has not alleged that she

opposed a race-based unlawful employment practice, and the court will therefore grant

Defendant's motion to dismiss Harrington's race retaliation claims.

### C. __Hostile Work Environment Claim__

A plaintiff alleging a hostile work environment claim must plead enough facts to establish that the "workplace is permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id*. Hostile work environment claims are "usually characterized by a series of events that cumulatively give rise to a claim, although each individual component might not be actionable on its own." *Craig v. District of Columbia*, 881 F. Supp. 2d 26, 32 (D.D.C. 2012) (citing *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115). And "it must be clear that the hostile work environment was the result of discrimination based on a protected status." *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201 (citation omitted).

Although it is a close case, the court finds that Harrington has pleaded enough facts to meet the hostile work environment standard based on her disability. She claims that Cook knew she had dyslexia, but had "no regard" for her disability. (ECF No. 33-1 at 5.) Cook constantly assigned her work outside the scope of her duties, "put her on the spot in front of other employees," and forced her to train another employee. (ECF No. 1-1 at 31; ECF No. 33-1 at 4.)

She also claims that another co-worker, on two separate occasions, made derogatory comments about her disability that elicited laughs from others, including Cook.  (ECF No. 1-1 at 38.) Taken together and viewed in the light most favorable to Harrington, these actions show "discriminatory intimidation, ridicule, and insult" severe enough to establish a hostile work environment based on her disability.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal quotation and citation omitted).  Therefore, the court will deny Defendant's motion to dismiss the disability-based hostile work environment claim.

However, Harrington's allegations related to race and sex—that her supervisor told her she has "two masters," verbal fights with co-workers, and a hug without her consent—are insufficient to support a hostile work environment claim because she does not allege conduct so "extreme to amount to a change in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009).  Therefore, the court will grant Defendant's motion to dismiss the sex and race-based hostile work environment claim.

## IV.   CONCLUSION

For the stated reasons, the court will GRANT in part and DENY in part Defendant's motion to dismiss and DENY Plaintiff's other motions.  A corresponding Order will issue separately.

Date:  September 30, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

15